## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| HI-TECH PHARMACEUTICALS, INC., | : | |
| A Georgia Corporation, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION FILE NO. |
| vs. | : | |
| | : | |
| IOVATE HEALTH SCIENCES U.S.A., | : | |
| INC., and PAUL A. GARDINER, | : | |
| an individual, | : | |
| | : | |
|     Defendants. | : | |
| _____ | : | |

## COMPLAINT

COMES NOW, the Plaintiff, Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech" or "Plaintiff"), by and through undersigned counsel of record, and states its Complaint against the Defendants Iovate Health Sciences U.S.A., Inc. and Paul A. Gardiner (collectively "Defendants") as follows:

## THE PARTIES

1.    Plaintiff Hi-Tech is corporation organized and existing under the laws of the State of Georgia, with its principal place of business located at 6015-B Unity Drive, Norcross, Georgia 30071.  Hi-Tech manufactures dietary supplement products and sells, distributes, and markets its products in the State of Georgia and throughout the United States.

1

2.      Defendant Iovate Health Sciences, U.S.A., Inc. ("Iovate"), is a Delaware corporation located at 1105 North Market Street, Suite 1330, Wilmington, Delaware 19801. Iovate Health Sciences, U.S.A., Inc. is the American subsidiary of Iovate Health Sciences, Inc., and is responsible for the manufacture, distribution, and marketing of the Protein Products, including the protein products at issue, in the State of Georgia, in this District, and throughout the United States.  Among these supplements are protein shakes and beverages sold in liquid (ready to drink) and powdered form under the brand names MuscleTech, Six Star, and EPIQ, which are the subject of the instant lawsuit (the "Products" or "Protein Products").

3.      Paul A. Gardiner ("Gardiner") is an individual who may be served at 381 North Service Road West Oakville, ON, L6M 0H4.

4.      Upon information and belief, Gardiner is the Chief Executive Officer of Iovate.

5.      Gardiner is liable under the Lanham Act for torts which he authorizes or directs or in which he participates.

6.      Gardiner also authorizes, participates in, directs, controls, causes, ratifies, and/or is the moving force behind the selection and sale and distribution of the products and/or personally sells the products described herein.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C § 1331 (federal question), 15 U.S.C § 1121 (Lanham Act claims), 28 U.S.C. § 1338 (trademark and unfair competition claims), 28 U.S.C § 1367 (supplemental jurisdiction), and 28 U.S.C. § 1332 (diversity), as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00).

8.     This Court has personal jurisdiction over Defendants.  For example, this Court may exercise personal jurisdiction over the Defendants pursuant to O.C.G.A. §9-10-91 because one or more of the Defendants are doing business in this judicial district and/or have committed tortious acts within this judicial district including unfair competition, among other wrongful and unlawful acts.   By way of further example and without limitation, Defendants have purposefully and voluntarily placed the products described herein into the stream of commerce with the knowledge, understanding, and expectation that such products would be and are purchased in the Northern District of Georgia.

9.     The products described herein are, and have been, available for purchase in the Northern District of Georgia and the violations of the Lanham Act occurred in this district.

10.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff Hi-Tech resides in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

11.   This action seeks redress for Defendants' deliberate and misleading representations regarding the Protein Products at issue in this case which are distributed and sold by Defendants under the following brand names: MuscleTech NitroTech, MuscleTech Phase8, MuscleTech Platinum %100 Whey, MuscleTech Platinum %100 Iso-Whey, Six Star Whey Protein Plus, Six Star Protein Shakes, Six Star Recovery Protein, Six Star Whey Isolate Plus, and EPIQ Isolate protein powders.

12.    This is an action under the Lanham Act, 15 U.S.C. § 1051, *et. seq.,* and the Georgia Deceptive and Unfair Trade Practices Act, O.C.G.A. §10-1-372 (a), for relief from Defendants' false advertising, deceptive acts, and unfair competition arising out of Defendants' use of false or misleading descriptions and/or false or misleading representations of fact. Hi-Tech brings this action to enjoin Defendants from continuing to falsely advertise its products, and to recover from the competitive injury that Defendants' false advertising and unfair competition have caused to Hi-Tech's business.

## I. HI-TECH AND ITS NITROPRO® WHEY PROTEIN PRODUCT

13.    Hi-Tech is a producer of high quality dietary supplements, including NitroPro®, a whey protein-containing dietary supplement for consumers seeking to develop and/or preserve muscle mass and strength.

14.    Hi-Tech distributes, markets and sells NitroPro® in the State of Georgia and throughout the United States via an extensive network of wholesale, Internet, and retail outlets such as health food stores, gyms and fitness centers. Hi-Tech has expended substantial resources to develop, promote, brand, market, sell, and maintain the quality of its NitroPro® product.

15.    Hi-Tech's NitroPro® product is similar to Defendant Iovate's Protein Products.

16.    The labels of each of Defendants' protein products feature the name of the product, the supplement facts, some of its key characteristics, and representations regarding amount of protein allegedly contained in the product.

17.    Defendants prominently display the amount of protein contained on the packaging and labeling of each of the protein products.

18.    Furthermore, Defendants emphasize the qualities, benefits and characteristics of the protein contained in their protein products.  For example, Defendants advertise the following products stating that:

**a.** MuscleTech NitroTech is a product containing "protein sourced primarily from whey protein isolate – one of the cleanest and purest protein sources available to athletes."  See

http://www.muscletech.com/products/performance-series/#sthash.8dET4ikl.dpuf

**b.** With respect to MuscleTech Phase8; "Each scoop of PHASE8 contains an impressive 26-gram blend of milk-derived proteins that supplies a sustained-release of amino acids." *id*

**c.** MuscleTech Platinum 100% Iso-Whey contains "ultra-pure, microfiltered whey protein isolates, the purest form of whey protein you can feed your body." *id*

**d.** MuscleTech Platinum Iso-Zero as "an ultra-premium, ultra-clean formula that has zero fat, carbohydrates, sugar, or lactose ." *id.*

19.    Hi-Tech markets and promotes its dietary supplements, including NitroPro®, through many types of advertising media including printed brochures and flyers, magazine advertisements, and distributors' catalogs. In addition, Hi-Tech's NitroPro® has been featured prominently in the trade publication entitled "Hi-Tech Health and Fitness," which was published quarterly for individuals and companies interested in the dietary supplement industry.  As a result, Hi-Tech's NitroPro®

product and brand has established substantial and valuable goodwill among consumers of dietary supplements.

20.     A key element to Hi-Tech's advertising campaigns is the fact its NitroPro® product contains high quality whey proteins. A reasonable consumer, looking at the false and misleading claims on the Defendants' product labels, and reading the "Supplement Facts," would be misled into thinking that the Defendants' protein products are labeled as having a specified amount of protein per serving.  However, contrary to Defendants' misrepresentations, their protein products contain less than the claimed amount of protein.  This total claimed amount of protein is overstated because of the addition of non-protein amino acids, known in the industry as "protein spiking".

21.     Protein is known as a "whole" or "complete" protein source, meaning it contains all of the essential amino acids the human body needs to build protein-based compounds such as muscle tissue, skin, fingernails, hair, and enzymes.  Nowhere on their labeling do Defendants state, or even imply, that their products contain any, let alone substantial amounts of protein-spiking agents such as non-protein compounds. The amount of protein contained in the protein products is a material fact that a reasonable consumer would consider important.

22.    Protein powder is especially rich in branched-chain amino acids – leucine, isoleucine, and valine – which are metabolized directly into muscle tissue instead of being first processed by the liver.

23.    Although amino acids are the "building blocks" of protein, free form amino acids and non-protein amino acids do not provide the same health benefits of a complete or whole protein such as whey protein. There have been several studies that have shown that protein is absorbed more rapidly than amino acids. See e.g., Di Pasquale MG. Amino Acids and Proteins for the Athlete: The Anabolic Edge, Second Edition.  Boca Raton, FL: CRC Press; 2008:190.

24.    The whey protein industry is a growing and extremely competitive business environment: "During the forecast period [of 2013-2018], [the market for] protein products is expected to grow by 62% to reach US$7.8 billion in 2018." See http://www.euromonitor.com/sports-nutrition-in-the-us/report.

25.    The wholesale price of whey protein is significantly higher than the wholesale price of free form amino acids and non-protein amino acids.

## II.    DEFENDANTS' FALSE PRODUCT CLAIMS AND "PROTEIN SPIKING" OF ITS PROTEIN PRODUCTS

26.    Upon information and belief, Defendants market, advertise, distribute, and sell Iovate's "Protein Products" throughout the State of Georgia, in this District, and across the United States.

27.    In marketing and advertising the "Protein Products" to consumers, Defendants make a specific false and misleading label claim regarding the amount and source of protein in the Protein Products.

28.    Defendants further mislead consumers by creating a Supplement Facts panel which discloses that the protein content of the Product is a certain amount of  grams per serving of protein.  Nowhere else in the Supplement Facts panel do Defendants list any other "proteins."

29.    Though the protein-spiking agents are included in the overall protein count, they are not, in fact, protein.

30.    Defendants also make this distinction on the product label by including the following misleading statements:

a.       "MuscleTech NitroTech is a product containing "protein sourced primarily from whey protein isolate – one of the cleanest and purest protein sources available to athletes."

http://www.muscletech.com/products/performance-series/#sthash.8dET4ikl.dpuf

b.       With respect to MuscleTech Phase8: "Each scoop of PHASE8 contains an impressive 26-gram blend of milk-derived proteins that supplies a sustained-release of amino acids." *id*

c.    MuscleTech Platinum 100% Iso-Whey contains: "ultra-pure, microfiltered whey protein isolates, the purest form of whey protein you can feed your body." *id*

d.    MuscleTech Platinum Iso-Zero as: "an ultra-premium, ultra-clean formula that has zero fat, carbohydrates, sugar, or lactose ." *id.*

31.    Once the protein-spiking agents are removed from the formula of analysis, and the "bound" amino acid count is determined, the true content of protein in the product can be ascertained.

32.    Laboratory tests performed on the "Protein Products" reveal the actual total content per serving of protein is actually much less protein than claimed by Defendants for the products.

33.    Thus, Defendants' claims regarding the protein quality and content of their "Protein Products", as set forth herein, are false and misleading. As a result, the consumer is left with a product that contains much less protein than advertised for the Protein Products.

34.    Instead of including the true quality and amount of whey protein advertised, Iovate substitutes Creatine, a non-proteinogenic compound and other free-form amino acids. As a result, nitrogen tests performed on Iovate's Protein Products would misleadingly indicate that the products contain the superior protein content

represented when it does not, in fact, contain the amount of whole protein or quality ingredients advertised.

35.    Covertly substituting non-proteinogenic compounds and/or free-form amino acids for whey protein or other complete protein ingredients in a product is commonly referred to in the market as "protein-spiking," "nitrogen-spiking," or "amino-spiking."

36.    Upon information and belief, Iovate "spiked" its Protein Products in order to reduce production costs, increase profit margins, and unfairly compete with Hi-Tech's NitroPro® product and brand.

37.    Thus, Defendants' claims regarding the protein content of the Protein Products, as set forth herein, are false and misleading.

38.    Defendants knew or should have known their claims regarding the Protein Products are false and/or misleading.

39.    Upon information and belief, Defendant Gardiner participated in, directed, controlled, caused, ratified, and/or was the moving force behind the selection and circulation of the false and/or misleading representations set forth herein.

40.    Defendants made the false and/or misleading representations set forth herein with the intention of deceiving customers and inducing said customers to rely upon said representations and purchase their "Protein Products" instead of H-Tech's NitroPro® product.

41.     The false and/or misleading representations set forth herein actually deceived, or had the tendency to deceive, a substantial portion of the targeted consumer base.

42.     Consumers justifiably relied upon the false and/or misleading representations set forth herein when purchasing Defendants' Protein Products.

43.     Hi-Tech has suffered and continues to suffer harm as a consequence of Defendants' wrongful marketing conduct in promoting their "Protein Products" including, but not limited to, competitive harm, diverted or lost sales, and harm to the goodwill of Hi-Tech's NitroPro® and brand.

## III.   DEFENDANTS'   FRAUDULENT   CONDUCT   AND RACKETEERING ACTIVITIES.

44.     Upon information and belief, Defendant Gardiner operated and managed the affairs of Defendant Iovate throughout all relevant times.

45.     Defendants Iovate and Gardiner knowingly engaged in a scheme to intentionally defraud Hi-Tech out of sales and profits though Iovate's sales of its inferior Protein Products.

46.     In intentional furtherance of this scheme, Defendant Iovate used the Internet to disseminate Iovate's inferior "Protein Products" to consumers across the United States, and to enable consumers to purchase Iovate's "Protein Products" online.

47.     In intentional furtherance of this scheme, Defendant Iovate also used the U.S. Mail and/or other interstate carriers to ship Iovate's "Protein Products", the products with inferior protein, to purchasing consumers throughout the United States.

48.     Upon information and belief, Iovate engaged in the fraudulent activities set forth herein on a repeated and continuous basis over the course of, at least, the past four (4) years.

49.     Defendant Gardiner agreed with others associated with and employed by Iovate to participate in and facilitate the fraudulent scheme set forth herein and had actual knowledge of Iovate's fraudulent activities set forth herein.

50.     Defendants' fraudulent activities described herein deceived consumers into believing Iovate's "Protein Products" were quality protein products like the Hi-Tech's NitroPro® product, and caused and enabled consumers to purchase Iovate's "Protein Products" instead of Hi-Tech's NitroPro® product.

51.     Defendants Iovate and Gardiner also knowingly engaged in a scheme to intentionally defraud Hi-Tech out of sales and profits though Iovate's false product claims regarding the "Protein Products'" content, quality, characteristics, and/or ingredients.

52.     Defendants' false product claims and fraudulent activities described herein deceived consumers as to the "Protein Products'" content, quality, characteristics,

and/or ingredients, and caused and enabled consumers to purchase Iovate's "Protein Products" instead of Hi-Tech's NitroPro® product.

53.    As a direct and proximate cause of Defendants' schemes and fraudulent activities set forth herein, Hi-Tech sustained injury to its business and property in the form of lost or diverted sales, competitive advantages, and goodwill in its NitroPro® and brand.

## COUNT I

### False Advertising under Lanham Act § 43(a), 15 U.S.C. § 1125(a)
### Against Iovate and Gardiner

54.    Hi-Tech incorporates by reference all previous paragraphs as though fully set forth herein.

55.     Defendants have knowingly made in interstate commerce and in this District, advertisements that contain false or misleading statements of fact regarding Iovate's "Protein Products". These advertisements contain actual and/or misleading statements including, but not limited to, the claims regarding the protein content in Iovate's "Protein Products". Upon information and belief, Gardiner personally authorized or directed these false and misleading statements,

56.    These false or misleading statements actually deceive, or have a tendency to deceive, a substantial segment of Hi-Tech's customers, and this deception is material in that it is likely to influence the purchasing decisions of Hi-Tech's customers.

57.   Defendants' false and misleading advertising statements violate the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

58.   Defendants' actions have caused, and will continue to cause, harm to Hi-Tech in the form of lost or diverted sales.

59.   Defendants have caused, and will continue to cause, immediate and irreparable injury to Hi-Tech, including injury to its business, ability to compete, and goodwill in its NitroPro® product and brand for which there is no adequate remedy at law.  Hi-Tech, therefore, is entitled to an injunction under 15 U.S.C. § 1116 restraining Defendants, their agents, employees, representatives, and all persons acting in concert with them from engaging in further actions of false advertising, and ordering removal of all Defendants' false advertisements.

60.   Pursuant to 15 U.S.C. § 1117, Hi-Tech is entitled to recover from Defendants the damages sustained by Hi-Tech as a result of Defendants' acts in violation of Lanham Act § 43(a).  Hi-Tech is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of Defendants' acts but should be able to do so through the discovery process.

61.   Pursuant to 15 U.S.C. § 1117, Hi-Tech is further entitled to recover from Defendants the gains, profits, and advantages that they have obtained as a result of their acts.  Hi-Tech is at present unable to ascertain the full extent of the monetary

damages it has suffered by reason of Defendants' acts but should be able to do so through the discovery process.

62.     Pursuant to 15 U.S.C. § 1117, Hi-Tech is entitled to recover the costs of this action. Additionally, upon information and belief, Hi-Tech believes that Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, entitling Hi-Tech to recover additional damages and reasonable attorney fees.

## COUNT II

## FALSE ADVERTISING IN VIOLATION OF SECTION 43(A)(1)(B) OF THE LANHAM ACT

63.     Hi-Tech incorporates by reference all previous paragraphs as though fully set forth herein.

64.     Defendants, who purport to sell "dietary supplements," have purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of their protein products by failing to disclose, or adequately disclose, to the consumers the accurate amount of protein that is actually in their "Protein Products'".

65.     Defendants' marketing of such misbranded and falsely-labeled products have the tendency to deceive a substantial segment of the consuming public into believing that they are purchasing a product with different characteristics. By failing to

16

accurately label the amount of protein on their "Protein Products'" labels, Defendants have misled consumers into believing that they are purchasing a dietary supplement with more protein than they are actually receiving.

66.    The deception is material because it is likely to influence a consumer's purchasing decisions, especially if the consumers have concerns about the quality of the protein and do not want non-protein compounds like creatine in their dietary supplement products.

67.    Defendants have introduced their false statements into interstate commerce via marketing and advertising on various websites and shipment of its product into interstate commerce containing false labeling.

68.    Defendants' actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of the products in violation of Section 43(a)(1)(B) of the Lanham Act.

69.    Hi-Tech's NitroPro® product competes directly with Defendants' "Protein Products."

70.    As a result of Defendants' misrepresentations, Hi-Tech has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Hi-Tech to Defendants and the loss of goodwill in Hi-Tech's products.

Indeed, Defendants' conduct is a black eye on the industry as a whole, and has the tendency to disparage and diminish Hi-Tech's products and goodwill.

## COUNT III

### VIOLATION OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT, O.C.G.A. §10-1-372 (a)

71.    Hi-Tech incorporates paragraphs all previous paragraphs as if fully set forth herein.

72.    Hi-Tech and Defendants are commercial competitors. Defendants' actions as described above constitute deceptive and unfair trade practices in violation of O.C.G.A. §10-1-372 (a).

73.    The Georgia Deceptive and Unfair Trade Practices Act was enacted to protect the public and legitimate business enterprises from those who engage in unfair methods of competition and unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

74.    Defendants' actions, as alleged herein, constitute unconscionable commercial practices, deception, fraud, false pretense, false promise, and/or misrepresentation in violation of O.C.G.A. §10-1-372 (a).

75.    Defendants' engaged in deceptive, unfair, and fraudulent misrepresentations as alleged herein. Consumers were certain to be deceived because Defendants' knowingly failed to disclose the true source, characteristics, ingredients, standards and/or quality of their "Protein Products."

18

76.    As a direct and proximate result of Defendants' unlawful acts and omissions, Hi-Tech has suffered an ascertainable loss of money or property in the form of diverted or lost sales.

77.    Hi-Tech is without remedy at law and Defendants' deceptive trade practices as set forth herein continue, and will continue, unless enjoined by this Court.

78.    Plaintiffs are therefore entitled to compensatory and punitive damages, equitable and injunctive relief, costs, and reasonable attorney fees.

## COUNT IV

## COMMON LAW UNFAIR COMPETITION

79.    Hi-Tech incorporates all previous paragraphs as if fully set forth herein.

80.    Defendants' actions, as set forth above, constitute unfair competition in violation of the common law of the State of Georgia.

81.    Defendants' actions as described herein have caused and will continue to cause irreparable injury to Hi-Tech and, unless restrained, will continue to do so.

82.    As a direct and proximate result of Defendants' conduct, Hi-Tech has suffered damages in an amount to be determined at trial.

83.    Defendants' actions entitle Hi-Tech to compensatory and punitive damages in an amount to be determined at trial.

84.    Defendants' actions are such as to constitute that level of wantonness and lack of care to justify punitive damages under Georgia law.

85.   Hi-Tech is without remedy at law and Defendants' deceptive trade practices as set forth herein continue, and will continue, unless enjoined by this Court.

86.   Hi-Tech is therefore entitled to compensatory damages, punitive damages, equitable and injunctive relief, costs, and reasonable attorney fees.

## COUNT V

## GEORGIA RICO CLAIM VIOLATION OF O.C.G.A. § 16-14-4(a)

87.   Hi-Tech incorporates all previous paragraphs as if fully set forth herein.

88.   Defendant Iovate Corp. is a "person" within the meaning of the Georgia RICO Law.  O.C.G.A. § 16-14-1, et seq.

89.   Defendant Paul A. Gardiner is a "person" within the meaning of the Georgia RICO law.  O.C.G.A. § 16-14-1, et seq.

90.   Defendant Paul A. Gardiner is employed by or associated with Iovate Corp. within the meaning of the Georgia RICO Law.  O.C.G.A. §16-14-4(b).

91.   In committing the acts described above, the Defendants, and their officers, agents, and employees repeatedly acted in furtherance of an unlawful scheme and endeavor that was continuously executed by them throughout, at least, the past two years.

92.   From on or about a date unknown but at least for at least the last two years, the Defendants herein did knowingly and willfully devise and intend to devise a scheme to intentionally defraud consumers and Hi-Tech out of sales and profits

through their false marketing of their "Protein Products" to consumers across the United States, and to enable consumers to purchase their "Protein Products" online.

93.    From on or about a date unknown but at least for at least the two years, the Defendants herein did knowingly and willfully devise and intend to devise a scheme to intentionally defraud consumers and Hi-Tech though their false and/or misleading product claims regarding the content, quality, characteristics, and/or ingredients of their Protein  Product.

94.    In committing the acts described above, Defendants, their co-conspirators currently unknown to Hi-Tech, and their officers, agents, and employees, repeatedly acted in furtherance of the unlawful scheme through a pattern of racketeering activity.

95.    Defendants, their co-conspirators currently unknown to Hi-Tech, and their officers, agents, and employees, repeatedly caused letters, and other matters and things to be deposited with and delivered by the United States Postal Service and/or interstate couriers to each other and others in repeated violation, or attempted violation, of 18 U.S.C. § 1341 (mail fraud).  Defendants specifically used the United States Postal Service and/or interstate couriers to ship their "Protein Products" to purchasing consumers throughout the United States.

96.    To the extent that either of the Defendants did not participate directly in these acts of mail fraud, they knowingly and willfully caused, aided, abetted, advised,

encouraged, hired, counseled, commanded, induced or procured another to commit these violations of 18 U.S.C. § 1341 and in violation of O.C.G.A. § 16-2-20.

97.    Defendants, and their officers, agents, and employees, could reasonably foresee the uses of the United States Postal Service and interstate couriers in connection with the execution of these unlawful schemes. All of these acts constitute "intangible contacts" with the State of Georgia designed to further all of the violations alleged in this Complaint.  In this regard, the Defendants, to include individual defendants and corporations have purposely directed tortious and fraudulent conduct toward the State of Georgia and Hi-Tech.

98.    Each of these "mailings" constitutes a separate racketeering act in furtherance of the fraudulent schemes which constitute a pattern of "racketeering activity" under Georgia RICO as specified in O.C.G.A. §§ 16-14-3(4)(A) and (5)(C).

99.    In furtherance of these unlawful schemes, and for the purpose of executing, and attempting to execute these schemes, Defendants and their officers, agents, and employees, repeatedly utilized the internet and email communications, in repeated violation, or attempted violation, of 18 U.S.C. § 1343 (wire fraud).  Defendants specifically used the internet and email communication to electronically disseminate their "Protein Products" to enable the online purchase of said products by consumers throughout the United States.

100.   To the extent that any of the Defendants did not participate directly in these acts of wire fraud, they knowingly and willfully caused, aided, abetted, advised, encouraged, hired, counseled, commanded, induced or procured another to commit these violations of 18 U.S.C. § 1343 in violation of O.C.G.A. § 16-2-20.

101.   Each of the Defendants and their officers, agents, and employees, could reasonably foresee the uses of the interstate wire communications in connection with the execution of these unlawful schemes.  All of these acts constitute "intangible contacts" with the State of Georgia designed to further all of the violations alleged in this Complaint.  In this regard, the Defendants, to include the individual defendant and corporation, have purposely directed tortuous and fraudulent conduct toward the State of Georgia and Hi-Tech.

102.   Each of these "interstate wirings" constitutes a separate racketeering act in furtherance of the fraudulent schemes which constitute a pattern of "racketeering activity" under Georgia RICO as specified in O.C.G.A. § 16-14-3(4)(A) and 5(C).

103.   Each of these acts of racketeering activity was authorized, requested, commanded, performed, or recklessly tolerated by Defendant Gardiner, and was done in furtherance of the execution of the unlawful schemes designed to defraud consumers and Hi-Tech.

104.   The multiple acts of racketeering activity by the Defendants and their officers, agents, and employees were interrelated, were and are part of a common and

continuous pattern of racketeering activity to include fraudulent acts and schemes, which were and are acts perpetrated for the same or similar purposes, and were and are not a series of disconnected, isolated or sporadic acts. These acts were and are part of the regular and routine way the Defendants conduct their business. The multiple racketeering acts by the Defendants and their officers, agents, and employees constitute a "pattern of racketeering activity" as defined in O.C.G.A. § 16-14-3(4)(A) and (5).

105.   By reason of the foregoing, the Defendants, and their officers, agents, and employees, directly and indirectly, acquired or maintained control of property, i.e. profits from fraudulent sales and profits diverted from Hi-Tech, through a pattern of racketeering activity in violation of the Georgia RICO Act (O.C.G.A. § 16-14-4(a)).

106.   As a direct and proximate result of these violations of O.C.G.A. §16-14-4(a) by Defendants, and their managerial officials, agents, and employees, Hi-tech has been injured and damaged as set forth herein.

## COUNT VI

### GEORGIA RICO CLAIM VIOLATION OF O.C.G.A. § 16-14-4(b)

107.   Hi-Tech incorporates all previous paragraphs as if fully set forth herein.

108.   By reason of the foregoing, the Defendants and their managerial officials, agents, and employees, have unlawfully, knowingly and willfully conducted and

participated in, directly or indirectly, the affairs of Iovate Corp. through a pattern of racketeering activity in violation or attempted violation of O.C.G.A. § 16-14-4(b).

109.   As a direct and proximate result of these violations of O.C.G.A. §16-14-4(b) by Defendants, and their managerial officials, agents, and employees, Hi-Tech has been injured and damaged as set forth herein.

## COUNT VII

## GEORGIA RICO CLAIM VIOLATION OF O.C.G.A. § 16-14-4(c)

110.   Hi-Tech incorporates all previous paragraphs as if fully set forth herein.

111.   By reason of the foregoing circumstances and events, Defendants individually and collectively knowingly and willfully, combined, colluded, conspired, attempted, endeavored, and continue to combine, collude, conspire, and endeavor, to violate the provisions of O.C.G.A. §16-14-4(a) and (b), in violation of O.C.G.A. §16-14-4(c).

112.   Defendants committed overt acts and preparatory acts to effect the objects of the conspiracy or endeavor as specified in all of the paragraphs preceding this Count. Each of these overt or preparatory acts is a racketeering act.  O.C.G.A. § 16-14-3(5).

113.   As a direct and proximate result of these violations of O.C.G.A. § 1614-4(c) by Defendants, and their managerial officials, agents, and employees, Hi-Tech has been injured and damaged as set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hi-Tech prays for relief as follows:

1.      That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Hi-Tech by using false, deceptive or misleading statements of fact that misrepresent the nature, quality, and characteristics of their "Protein Product."

2.      That Hi-Tech be awarded damages it has sustained as a consequence of Defendants' conduct.

3.      That Hi-Tech be awarded Defendants' profits obtained by Defendants as a consequence of Defendants' fraudulent conduct.

4.      That such damages and profits be trebled and awarded to Hi-Tech as a result of Defendants' willful, intentional and deliberate acts in violation of the Lanham Act § 43(a).

5.      That all of Defendants' misleading and deceptive materials and products be destroyed as allowed under 15 U.S.C. § 1118.

6.      That this case be declared exceptional in favor of Hi-Tech under 35 U.S.C. § 285 and that Hi-Tech be awarded its reasonable attorneys' fees and other expenses incurred in connection with this action pursuant to 35 U.S.C. §§ 284 and 285 and Rule 54(d) of the Federal Rules of Civil Procedure;

7.      That Defendant Gardiner be adjudged to have violated 15 U.S.C. §1125(a) by unfairly competing against Hi-Tech by using false, deceptive or

misleading statements of fact that misrepresent the nature, quality, and characteristics of the Iovate "Protein Products".

8.     That such damages and profits be trebled and awarded to Hi-Tech as a result of Defendants' willful, intentional and deliberate acts in violation of the Lanham Act;

9.     That Plaintiffs recover actual damages, treble damages, costs, and attorney fees for Defendants' violation of Georgia RICO statute;

10.     That all of Defendants misleading and deceptive materials and products be destroyed as permitted under 15 U.S.C. § 1118;

11.     That Defendants be adjudged to have unlawfully and unfairly competed against Hi-Tech under the laws of the State of Georgia, O.C.G.A. §10-1-372(a);

12.     That Hi-Tech be awarded Punitive Damages pursuant to both Georgia and federal law; and

13.     That Hi-Tech be awarded such other relief as this Court may deem just and proper.

JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and all applicable law, Hi-Tech requests a trial by jury on all issues so triable.

Respectfully submitted,

*S/ Edmund J. Novotny*
Edmund J. Novotny, Jr.
Georgia Bar No. 547338
Charles R. Bridgers
Georgia Bar No. 080791
*Counsel for Plaintiff Hi-Tech*
*Pharmaceuticals, Inc.*

101 Marietta Street
Suite 3100
Atlanta, Georgia 30303
Tel: 404-979-3150
Fax: 404-979-3170
ednovotny@dcbflegal.com
charlesbridgers@dcbflegal.com